### In the Matter of CORMARC, INC., Debtor.

### Bankruptcy No. 81–00258–BKC–SMW.

United States Bankruptcy Court, S. D. Florida.

Sept. 8, 1981.

Raymond Ray, Fort Lauderdale, Fla., for Gulfstream Bank.

Joseph Easthope, Fort Lauderdale, Fla., for debtor.

ORDER FOR ADEQUATE PROTECTION

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the Court upon the Motion for Adequate Protection, 11 U.S.C., section 363(e), of the Creditor Gulfstream Bank, N.A., against the Debtor, Cormarc, Inc. The motion was presented at a hearing on August 26, 1981.

Upon presentation of the evidence at the hearing it was shown that the debtor, Cormarc, Inc., is in the business of manufacturing cultured marble. Plaintiff is a secured creditor holding a first lien on all of the debtor's assets including accounts receivable. Any entity with an interest in property of the debtor may request that the Court prohibit or condition use, sale, or lease of such property as is necessary to provide adequate protection to the creditor under 11 U.S.C. 363(e). Section 363 follows the burden of proof rule established in section 362. "Section 362(g) places the burden of proof on the issue of 'no equity' upon the party requesting relief from the stay, and the burden of proof on all other issues is upon the party opposing such relief." *In the matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635, 2 CBC2d 348, 356 (Bkrtcy.E.D.N.Y.1980).

The plaintiff presented evidence which showed that the amount of the debt owed by the debtor to the plaintiff is in excess of $400,000.00. The collateral for this debt is a first lien on all of the debtor's assets which consist primarily of machinery, equipment and accounts receivable. Through expert testimony the plaintiff showed that the equipment and machinery of the debtor are currently valued at $67,000.00. This value established for equipment and machinery includes items which are subject to prior liens thereby reducing the value of assets subject to plaintiff's lien to $35,000.00. The expert witness further testified that the value would be reduced by the cost of liquidation.

The plaintiff further presented evidence that the debtor was diminishing accounts receivable at rate greater than the generation of new accounts receivable at the present time the accounts receivable are approximately $200,000.00. The debtor testified that certain of these receivables represent retainage and would therefore be uncollectable in the event the debtor went out of business. Evidence offered by the plaintiff showed, as do the debtor-in-possession reports, that accounts receivable are being collected by the debtor and the proceeds used as working capital. No interest payments to the plaintiff on the loans of the debtor have been made for the past 10 months with the result that the debtor is in arrears $80,000.00 in said payments. Furthermore, unpaid administrative expenses and other charges have accumulated in the amount of $52,000.00. While no payments are being made to the plaintiff, the corporate officers of the debtor are collecting salaries of $6,500.00 per month.

The debtor by its own admission disclosed that a downturn in construction industry has caused a substantial reduction in its business with no change expected in the immediate future.

The plaintiff having met the burden of producing evidence of no equity in the assets of the debtor shifted the burden of proof to the debtor to show that the plaintiff is adequately protected. The debtor has failed to meet this burden. The only evidence offered by the debtor was that of the company president who, by his own admission to the Court, revealed that the collection of accounts receivable was necessary to provide working capital. Furthermore, after application of the proceeds to working capital, insufficient funds remain to provide payment to the plaintiff in connection with the loan interest due. The debtor further disclosed that a plan for reorganization was dependent upon the procurement of new contracts which are speculative at this point.

The debtor offered testimony that the plaintiff had as additional collateral a third

and fourth mortgage on the home of the principal of the debtor corporation as well as certain shares of Safeguard stock. However, the evidence clearly established that the ownership and the transferability of the stock is not only in question but has resulted in a complex lawsuit now pending in the U.S. District Court. The plaintiff has shown that the stock in question is not pledged as collateral for the loans before the Court in this action but is pledged as collateral for the loans before the Court in this action but is pledged as collateral for a personal loan to the president of the debtor corporation. The additional collateral of third and fourth mortgages on the home of the principal of the debtor corporation is subject to two substantial mortgages with priority over the plaintiff.

The plaintiff has shown through expert and other testimony that it is not adequately protected. Continued operation by the debtor will not insure protection of the plaintiff's collateral and will in fact further damage the position of the plaintiff. Continued use of the accounts receivable by the debtor to provide working capital without payment to the plaintiff further reinforces the plaintiff's demand for adequate protection.

IT IS, therefore, ORDERED and ADJUDGED that:

(1) The Debtor shall bring current all interest payments due Gulfstream Bank, N.A., in the approximate sum of eighty thousand dollars ($80,000.00) on or before September 16, 1981.

(2) The Debtor shall place in escrow fifty percent (50%) of all funds received or collected by the debtor from the date of this order up to and including those received on September 16, 1981. Such amounts placed in escrow shall be deposited in a separate interest bearing account denominated "Accounts Receivable-Escrow". The debtor may not use the escrowed funds without order of this Court authorizing such use.

(3) The Debtor shall file with the Court and with the Attorney for Gulfstream Bank, N.A., a weekly report specifically setting forth in such report; the name and amount of each accounts receivable collected during the week, and the portion of funds for each accounts receivable placed in escrow. Such report to be filed with the Court and delivered to the Attorney for Gulfstream Bank, N.A., no later than five o'clock P.M. on the Monday following the end of the week being reported.